McMahon *et al. v.* Paris *et al.*

1. Where the suit was against two sureties upon an administrator's bond, and both of them excepted to the first report made by an auditor, and only one excepted to the second report, the other surety could be allowed to join him in these latter exceptions, it not affirmatively appearing that the time fixed by the court for excepting had expired.
2. According to the transcript of the record, there was no authority for the auditor to investigate, at his second sitting, the question of the administrator's solvency or insolvency, or of the time when he became insolvent.
3. The duty of administering the estate of an intestate is devolved by law upon the administrator, not on the heirs and distributees, who have a right to act for the protection of their own interests, and in doing so to invoke and accept the co-operation of the administrator in resisting creditors by all lawful means; and if creditors are thus defeated and the estate is saved to the heirs and distributees, though in the meantime wasted by the administrator, and he becomes insolvent, the sureties on his administration bond are not discharged.
July 20, 1891.

Administrators. Bonds. Auditor's report. Exceptions. Practice. Debtor and creditor. Before Judge Milner. Dade superior court. September term, 1890.

Reported in the decision.

W. U. & J. P. Jacoway, R. J. & J. McCamy and W. K. Moore, for plaintiffs.

McCutchen & Shumate and Dabney & Fouché, for defendants.

Simmons, Justice.

This was a suit by the ordinary of Dade county, for the use of the heirs at law of Milton Derrybery, upon the administration bond of Graham, the principal, and Paris, Cureton *et al.*, sureties. The case was referred to an auditor, who, after taking testimony, filed his report. To this report Paris and the heirs of Cureton, who were made parties defendant, filed exceptions. One of the exceptions it seems was that the report was not full enough upon certain points, and the court re-referred

the matter to the auditor. The auditor made and filed
another report, to which Paris filed exceptions and the
Curetons did not. The case coming on for trial, the
Curetons asked leave to consolidate their exceptions to
the original report with those of Paris, and to adopt the
exceptions filed by Paris to the supplemental report.
This motion was objected to by the plaintiffs, on the
ground that it was too late for the Curetons to file ex-
ceptions; that "they had filed no exceptions within sixty
days nor even up to the September term, 1890, of said
court"; and that as they had "failed to file any excep-
tions to the supplemental report as required by the order
of the court, they could not now do so." The court over-
ruled the objection and allowed the exceptions to be con-
solidated and the Curetons to join in the exceptions to
the supplemental report. This is excepted to as error.

1. As before stated, this was a suit against the prin-
cipal and the sureties on Graham's bond; both of the
sureties excepted to the original report of the auditor
and only one to the supplemental report. We think
the court was right in allowing the Curetons to join in
the exceptions filed by Paris to the supplemental report.
Their defences were the same; and if the facts stated by
Paris in his exceptions were sufficient to discharge him,
they would also discharge the Curetons. Besides, it
does not appear from the record within what time the
defendants were required to file exceptions. What the
order of the court was as to the filing of the exceptions,
or the time of filing, is not stated. The order of the
court, if there was an order stating in what time excep-
tions might be filed, is not in the record, and therefore
it does not appear to us but that the Curetons were in
time to join in the exceptions filed by Paris. The re-
port of an auditor is subject to exceptions for such time
as the court may allow (Code, §4203), and the time may
be extended within the discretion of the court. The

court having allowed the exceptions, and it not appearing from the record that they were improperly allowed, it is to be presumed that they were in time.

2. At the rehearing by the auditor, the defendants offered testimony as to the solvency or insolvency of Graham, their principal, and as to the time when he became insolvent. This testimony was objected to by the plaintiffs on the ground that the auditor had no authority to take testimony on that question. On the trial of the case the defendants offered to read this testimony to the jury, and the plaintiffs again objected, "on the ground that the auditor had no authority to hear and report upon this question, as it was closed by the first hearing before the auditor, and this question was not re-referred to the auditor." The objection was overruled and the evidence admitted, and to this ruling the plaintiffs excepted. The bill of exceptions states that the case was re-referred to the auditor and he was directed "to hear testimony and find and report who were and are the heirs of Milton Derrybery, whether John McMahon is an heir or not, and what relation Nancy Derrybery sustained to said deceased, if any, and to this end the auditor shall hold another sitting and give previous notice to the parties or their attorneys, of such sitting and further hearing, and shall then take and report any testimony offered by either party on the question here referred to him in relation to said alleged mistake in his former report." The order of re-reference is not in the record, and this quotation from it in the bill of exceptions is all that appears in the entire record. Whether the quotation contains all of the order we do not know. If it does, then it is clear that the auditor had no authority to hear and determine any other question than the one submitted in the order, and the court therefore erred in admitting testimony taken and reported by the auditor as to the question of Graham's solvency or in-

solvency, because he had not been directed to take such testimony at the rehearing.

3. The exceptions filed by the defendants were, in substance, that the auditor erred in not finding and reporting that there was an understanding and agreement between Graham, the administrator, and Nancy Derrybery, and the children of the deceased, that Graham should hold all the money and effects of said estate, and not pay the same over to the creditors, and should delay making returns, and should fight off and delay the creditors in the collection of their debts, under the various laws made after the war in relation to old and ante-war debts; that this understanding was unknown to the sureties of Graham, and that in pursuance of the understanding, Graham failed to make regular returns, and refused to pay out the money in his hands to the creditors, but took advantage of the several laws aforesaid to delay and fight off creditors through the space of many years; that the valid debts of the deceased were more than sufficient to consume the whole estate at the time said agreement was made; that at that time Graham was solvent and able to account for the whole amount of the estate, but afterwards, while carrying out said undertaking, he became insolvent; and that the sureties of Graham were injured and damaged, and their risks increased by reason of the understanding between Graham and the heirs aforesaid. The judge charged the jury that if they found from the evidence the facts as contended for by the sureties, then they would be discharged from liability upon Graham's bond as administrator, and they should find the exceptions covering this issue in favor of the exceptors. To this charge the plaintiffs excepted, and assign error thereon.

We think this exception is well taken. If all the facts alleged in the exceptions to the auditor's report were true, we do not think they would be sufficient to

discharge the sureties of the administrator. Under the law it is the duty of the administrator to administer the estate of the deceased. He, and not the heirs and distributees, represents the estate. It is his duty to collect the assets and pay all just debts of his intestate. If a debt is presented to him which, under the law existing at the time the debt was contracted, is not binding upon the estate, he has the right to litigate with the creditor, and to get rid of it if the law will allow. The heirs and distributees have the right to protect their own interest in the estate, and they also have the right to invoke the aid of the administrator in resisting creditors by all lawful means, and if they can defeat the creditors with the aid and assistance of the administrator, by lawful means, and the estate is saved to them, they can sue and recover from the administrator, or his sureties, in case the administrator has wasted the estate pending such litigation. If creditors are lawfully defeated in their claims against the estate, the heirs are entitled to such benefit as may be derived therefrom. The fact that the heirs co-operated with the administrator in defeating the creditors by lawful means, and the further fact that the administrator, with their consent, held the assets pending litigation, and afterward wasted them and became insolvent, will not discharge the sureties. The sureties, in their bond, guaranteed that the administrator would faithfully administer the assets of the estate, and that if he failed to do so, they would be responsible. It was therefore their duty to look after the administrator, and to see that he regularly made his returns to the court of ordinary, and generally to see that he faithfully administered his trust; and if they failed to do this they became liable as his sureties for his waste or mismanagement.          *Judgment reversed.*