### 29180. MANRY, administratrix, *v.* HENDRICKS.

DECIDED DECEMBER 2, 1941. REHEARING DENIED DECEMBER 16, 1941.

*A. L. Miller, Lee Miller Jr., W. L. Stone, Orabel Rabon,* for plaintiff in error.

*Bennet & Peacock, Vance Custer,* contra.

SUTTON, J. Mrs. Ruth Hendricks brought suit in the superior court against C. A. Manry, the petition as amended alleging in substance as follows: She and Manry became partners in a partnership business, the management of which was left to him, she

looking entirely to him for a full and fair accounting so far as her interest was concerned. Having full faith and confidence in him, she never required of him a particularized statement of the affairs of the business, but trusted to his honesty and fairness to render unto her her proportionate share of any earnings or profits therefrom. In May, 1931, at her own expense, she had the affairs and accounts of the partnership business audited, the audit covering a period of years. When the audit was begun, the accountants conducting the same found that the individual ledger sheets of Manry's account were missing from October 1, 1925, to March 28, 1931, and that the balance shown to be due by him to the partnership on April 1, 1931, was $3242.18. Upon being requested to produce said individual ledger sheets Manry informed the accountants that the balance above stated had been transferred to a new sheet and that the old ledger sheets had been destroyed, he assuring them then and there that the balance of $3242.18 was correct and represented all that he owed the partnership. Being dissatisfied with the conditions found to prevail in said business, the plaintiff began negotiations which led to her obtaining from Manry on July 24, 1931, an offer to buy the interest of the plaintiff in said partnership business upon certain terms, the offer stipulating that it was to be "a give or take proposition as per the books." In pursuance of said offer the plaintiff, on July 30, 1941, purchased the interest of Manry upon the basis of his indebtedness to the business being $3230.20 and the recognition of an error of $1000 which existed in his favor, thus making a total of $4230.20 as his represented indebtedness, "and a dissolution of said partnership was effected upon that basis, a copy of said dissolution agreement being hereto attached and marked Exhibit A." The copy of the dissolution agreement attached to the petition recites the fact of the parties having theretofore entered into partnership, each equally interested therein, and that "the said parties desiring to dissolve said partnership hereby agree to dissolve the same upon" terms which were then and there recited, being in part that "the said Manry agrees to accept for his interest in said partnership the sum of $10,500. $4230.20 of said sum is owed said business by said Manry. Deducting this sum leaves the balance of $6269.78 to be paid by the said Mrs. Hendricks to the said Manry, and the said Mrs. Hendricks agrees to pay said sums

in the following manner, to wit: [Then are listed four notes in named sums and due dates, each of which was to bear interest after maturity until paid.] The said C. A. Manry, for and in consideration of said sums and notes hereby conveys and sells and assigns to the said Mrs. Ruth Hendricks all his right, title, and interest and choses in action and all assets of any nature whatsoever to the said Mrs. Ruth Hendricks, and the said Mrs. Ruth Hendricks agrees to pay the notes, accounts, and debts owing by said business as a further consideration for the interest bought of said Manry, and to relieve the said Manry from any liability thereon." The plaintiff then took charge of the business. On August 4, 1931, the personal ledger sheets of Manry from October 1, 1925, to March 28, 1931, were found, being the same which Manry had represented as having been destroyed by him, and the averment is made that the same had been concealed by him to prevent a disclosure of the truth of his personal account. On May 3, 1926, the balance due by Manry to the partnership was the sum of $5000.69, according to the books of said business kept by and under the supervision of Manry, and on that date there appears an entry upon said ledger sheet, "by note, $5000," and the plaintiff avers that no note of any person, unless it may have been the note of Manry, was ever credited to said account, and if such a note was executed by him it was never paid, and at the time of the said dissolution agreement he still owed said business, by reason thereof, $5000 more than appeared. At the close of business on December 31, 1929, the ledger account of Manry, as appears by the balance sheet kept by Manry, and under his supervision, showed a balance of $6217.78 which was arbitrarily reduced by a pencil entry, made by the defendant and under his direction, of a false credit of $3500 without showing the same in its proper order in said account or without any explanation, leaving a balance of $2717.78, and plaintiff avers that no money, or other thing of value, was received by the firm as purported by the false credit, and the defendant really owed said firm, at the time of said dissolution, said amount of $3500 more than was shown by the books as kept by the defendant at the time of said dissolution; that "said unlawful abstractions and deductions of the amount due by the said C. A. Manry to the Farmers Hardware & Furniture Company [the partnership name] as set out in the above statement amounts

to the sum of $8500, and in a fair and equitable dissolution of said partnership should have been admitted as an indebtedness of the said C. A. Manry to said firm account and deductible from any interest that he might have had at the time of said dissolution, but said facts and said abstractions from said business were concealed from your petitioner by the deliberate concealment of said ledger sheets which were found by petitioner on the 4th day of August, 1931, and for the first time the actual knowledge of the imposition practiced by the said C. A. Manry upon your petitioner in the dissolution and closing out of said partnership business became known to her, and plaintiff did not know of said false entries until said missing ledger sheets were discovered and brought to plaintiff on August 4, 1931, and by reason of the two items mentioned said defendant really owed said firm, at the time of said dissolution, the sum of $8500 more than was shown by his account on the books of said company, as kept by him. Your petitioner shows that at no time between the 1st day of October, 1925, and the 4th day of August, 1931, was your petitioner aware of the fact that the said C. A. Manry had deliberately taken out of his personal account the amounts as above set forth without having paid or secured said business for said sums amounting to the total sum of $8500. . . Said defendant, on April 22, 1931, procured from Mutual Life Insurance Company a loan on a policy issued by said company on defendant's life in favor of said Farmers Hardware & Furniture Company of $861.35, the same being the property of said company, the premiums on said policy having been paid by said company, and then converted the entire amount of said loan to his own use and benefit. Your petitioner shows that to arrive at the truth of the account of the said C. A. Manry with Farmers Hardware & Furniture Company from the 1st day of October, 1925, to the 28th day of March, 1931, that it will be necessary to investigate a vast number of entries and accounts appearing thereon, and that because of the intricacies of bookkeeping and accounting as would affect the assets of said Farmers Hardware & Furniture Company at the time of the dissolution thereof, as between petitioner and the said C. A. Manry, that it will be necessary that an accounting be had to determine in what sum and amount the said C. A. Manry has defrauded your petitioner." The plaintiff prayed that an auditor be appointed, with

authority to bring Manry to an accounting with her; that she recover from Manry a judgment of $8500 with proper allowance for interest thereon; and for general relief.

Demurrers on general and special grounds and an answer denying material allegations of the petition were filed by the defendant. The case was referred to an auditor whose report was adverse to Manry. He filed exceptions of fact and of law. Subsequently Manry died, and Mrs. Pearl Manry, as the administratrix of his estate, was by proper order of court substituted in his place and stead as defendant. The defendant's exceptions of fact and of law were thereafter disapproved by the court and the auditor's findings and judgment were sustained on November 29, 1940. Final judgment was on December 2, 1940, entered in favor of the plaintiff in the sum of $8930.67, with interest thereon at 7 per cent. from August 20, 1931, the date of the filing of the plaintiff's petition.

The defendant, evidently conceiving the case to be one in equity, took the case by bill of exceptions to the Supreme Court with certain assignments of error hereinafter set forth. That court (Manry v. Hendricks, 192 Ga. 319, 15 S. E. 2d, 434) ruled that the case was not one in equity, and that it was without jurisdiction. The case was accordingly transferred to this court, and in the opinion it was said: "The petition bears a filing date of August 20, 1931. It is alleged that on July 30, 1931, the petitioner purchased her partner's interest in the partnership business on stated terms, 'and a dissolution of said partnership was effected upon that basis, a copy of said dissolution agreement being hereto attached and marked Exhibit A.' . . Therefore [after quoting from the dissolution agreement] it appears that no copartnership was existing at the time the suit was filed. It had been dissolved. . . . The petition contains allegations appropriate to an action of damages for fraud and deceit, and none other; and that is a common-law action. . . It is true that an accounting is prayed for, but this prayer can be granted by a court of law, as well as a court of equity. Indeed it has been held that the mere necessity for an accounting to ascertain the amount due on contract is insufficient to give equity jurisdiction to order an accounting. . . It is true that 'it is a general rule that an action at law will not lie in favor of one or more partners or their representatives against one or more copart-

ners or their representatives upon a demand growing out of a partnership transaction until there has been a settlement of accounts and a balance struck.' 15 Enc. Pl. & Pr. 1005. The petition in the present case, however, proceeds upon the idea that all partnership relations between the plaintiff and the defendant have come to an end, that a balance has been struck, and that an indebtedness is due by the defendant to the plaintiff, which can not be affected by any transactions between the partnership and its creditors or debtors. Strictly speaking, it is not an action by a member of a firm against his copartner, but an action by one man against another who had formerly been his partner, upon an indebtedness a part of which grew out of the formerly existing partnership between them. . . If the petition in the instant case had been addressed to the city court of Morgan, a court having no equitable jurisdiction, the complainant could have obtained in that court all the relief she here seeks."

Before entering into a discussion of the issues here involved we quote from the bill of exceptions as follows: "The said auditor's report was adverse to the said Manry and his contentions in said case, and he, the said C. A. Manry, did then and there, and within the time provided and allowed by law, make and file his exceptions to such auditor's report, the same consisting of eleven (11) exceptions of fact and five (5) exceptions of law, and in which said exceptions the said C. A. Manry prayed that his said exceptions of fact be approved by the court and passed upon by a jury, and that his exceptions of law be sustained and approved. A copy of said exceptions to said auditor's report is hereby attached, marked 'Exhibit B,' and made a part hereof. The said C. A. Manry did then and there except to said auditor's report and to the finding thereof (as is fully set out in his said exceptions thereto), and now excepts to the same and assigns the same as error, on the grounds and for the reasons set out in his said written exceptions. Plaintiff in error alleges that said report of said auditor entered into, affected, and controlled the further progress and final result of said case, and that said auditor erred in making each of the said findings so excepted to. Thereafter, on December 2, 1940, Hon. Howell Cobb, then the judge of said court, made and entered a final judgment and order in said case wherein, among other things, it was ordered that 'the court overrules and disallows all of said

exceptions of law and fact filed in said case, and hereby makes the report of the auditor the judgment of the court in said case.' The auditor having in his report found against C. A. Manry and his contentions in said case, as specifically stated and set out in said exceptions to such report, and such findings and report of the auditor being controlling, as plaintiff in error contends, which entered into and affected the further progress and final result of the case, the court erred in making and entering said final judgment. Subsequently to the making and filing of said auditor's report the plaintiff (now defendant in error) moved the court to 'enter a judgment and order (1) disapproving and disallowing the defendant's exceptions of fact filed to the auditor's findings, and (2) overruling said exceptions of fact, and (3) overruling each of defendant's exceptions of law, and (4) that the court enter judgment in said case in accordance with the findings of the auditor.' Subsequently, C. A. Manry departed this life, and Mrs. Pearl Manry, as the administratrix of his estate, was by proper order made defendant in said case in his place and stead. Subsequently, on November 29, 1940, said exceptions to said auditor's report and said motion to disapprove, disallow, and overrule said exceptions came regularly on to be heard before the Hon. Howell Cobb, then judge of said superior court, and on that day, after argument had, said judge passed an order upon said motion, ordering and adjuding that 'all exceptions of law and of fact filed to the auditor's report be and the same are hereby overruled and disallowed.' Plaintiff in error alleges that said judgment and order passed on November 29, 1940, as aforesaid entered into, affected and controlled the further progress and final result of said case, and that she did then and there except to such order and judgment, and now excepts to it, and assigns error upon it on the ground that it was contrary to law, and says that said judge should have sustained and approved each and every ground of the said exceptions to the auditor's report for the reasons and on the grounds therein specifically set forth and alleged in them, and that the court erred in making said order and judgment dated November 29, 1940, for each of the reasons and grounds set forth specifically in said exceptions to the auditor's report. Thereafter, on December 2, 1940, the said judge, the Hon. Howell Cobb, made and entered a final judgment in said case (which judgment has been herein-

before referred to), wherein, among other things, it was provided, ordered, and adjudged that 'the defendant having filed exceptions of fact and exceptions of law to said (auditor's) report, the court overrules and disallows all of said exceptions of law and of fact filed in said case, and hereby makes the report of the auditor the judgment of the court in said case.' A copy of such final judgment, marked 'Exhibit C,' is hereto attached and made a part hereof. Having overruled the defendant's exceptions to the auditor's report, and such order and ruling being controlling, as the plaintiff in error contends, which entered into and affected the further progress and final result of the case (and which order was repeated and reiterated in the final judgment), the court erred in making and entering such final judgment. To the action of the court in making and entering such final judgment the plaintiff in error then and there excepted, and now excepts, and assigns the same as error upon the ground that the same was contrary to law because: (a) the court having overruled the defendant's exceptions to the auditor's report, and such action and order being controlling in effect, the said final judgment can not be, and is not, a legal termination of said case; and (b) that portion of the final judgment as again adjudicates, repeats, and reiterates that 'the court overrules and disallows all of said exceptions of law and of fact filed in said case' is contrary to law for each and all of the reasons set out specifically in defendant's exceptions to the auditor's report, marked 'Exhibit B,' and made a part hereof."

██ The auditor overruled the defendant's grounds of demurrer, general and special, and the defendant in his exception of law No. 3 assigned the same as error. The court overruled the exception and sustained the auditor's ruling. Whether or not the petition as amended set forth a cause of action will now be determined.

The present action is, as stated by the Supreme Court, not one by a member of an existing partnership against his copartner, but is an action by one person against another who had formerly been his partner. The plaintiff seeks to recover $8500 as an amount which was due the partnership business by C. A. Manry, at the time of its dissolution, by reason of the alleged fact that certain offsetting credits in the respective amounts of $5000 and $3500 were false, fraudulent, and without substance, in that these credits purported to show the execution and delivery to the partnership

by Manry of two notes which in fact were never executed and delivered, and which, even if executed and delivered, were never paid. The plaintiff seeks to recover an additional sum of $861.35 which she alleges Manry received as a loan on an insurance policy belonging to the partnership, and which sum he converted to his own use, never charging to his individual account the sum he received. In other words, the plaintiff avers that the indebtedness of Manry to the partnership, at the time of the dissolution agreement, was $9361.35 more than Manry represented in his bookkeeping. The plaintiff seeks to recover this sum because of the fact that, already having a one-half interest in the partnership business, she bought from Manry, the only other partner, his one-half interest, thus becoming entitled to all of the partnership assets, including a chose in action against Manry to the extent of his individual indebtedness, the true status of which he concealed from her at the time he represented that he was due the partnership business only the sum of $4230.20.

While the petition contains allegations which are appropriate to an action for damages on account of alleged fraud and deceit practiced by Manry upon the plaintiff, we think that properly construed, and strictly speaking, as stated by the Supreme Court in its opinion transferring the case to this court, the action is one brought by a person against another, who had formerly been the plaintiff's partner, upon an *indebtedness,* and that the indebtedness is one for which an action will lie by reason of the contract entered into between the parties in consummating the dissolution of the partnership. Furthermore, to arrive at the truth of the actual indebtedness the plaintiff was entitled to an accounting which, as pointed out by the Supreme Court, may equally be had at law as well as in equity.

It is alleged that the plaintiff and C. A. Manry were equally interested in a partnership business conducted under the name of Farmers Hardware & Furniture Company; that the plaintiff had reposed full faith and confidence in him, as manager of the business, never requiring of him a particularized statement of its affairs, but, in May, 1931, had, at her own expense, an audit made of the business covering a period of years; that the accountants found several ledger sheets of Manry's individual account missing from October 1, 1925, to March 28, 1931, and that the balance

shown to be due by him on the new or final sheet on April 1, 1931, was $3242.18, Manry informing the accountants that the older ledger sheets had been destroyed by him, but assuring them that $3242.18 was all he owed the partnership; that being dissatisfied with conditions found to prevail in the business the plaintiff, after negotiating with Manry, obtained from him an offer on July 24, 1931, to buy her interest in the partnership business upon certain terms, the offer stipulating that it was to be "a give or take proposition *as per the books* [italics ours]; that in pursuance of said offer the plaintiff, on July 30, 1931, purchased the interest of Manry upon the basis of his represented indebtedness being $4230 (taking into consideration an error of $1000 which Manry recognized as having been made in his favor in his bookkeeping), and thereupon a "dissolution agreement" was entered into between the parties as per copy attached to the petition. This written agreement recites a dissolution of the partnership. It did not provide for payment of liabilities in general out of partnership funds and assets and for equal distribution of net assets thereafter between the partners, but under it the plaintiff became the purchaser of Manry's one-half interest, he relinquishing all his right and title to the assets and becoming as between the partners themselves released from all liabilities save his own, in consideration of the expressed agreement between them that "the said Manry agrees to accept for his interest in said partnership the sum of $10,500." The agreement recited, however, that he was indebted to the business in the sum of $4230.20. "Ordinarily, a partner's sale of all his rights, title, and interest in the firm to his copartner relieves the seller from all liability to the firm for overdraft or similar indebtedness." *Silver* v. *Shoob, 26 Ga. App.* 31 (105 S. E. 312). As ruled in that case, however, "This rule may of course be varied by the particular terms of the contract of sale." As evidencing an intention that Manry was not to receive in the final analysis a net sum of $10,500, the agreement recites: "Deducting this sum [$4230.20] leaves the balance of $6269.78 to be paid by the said Mrs. Hendricks to the said Manry." Then follows a statement that she shall pay the difference of $6269.78 by notes in stated amounts, which apparently include interest on the respective sums, all of which notes shall bear interest after maturity until paid. In this way Manry, instead of

paying Mrs. Hendricks $4230.20 as his represented indebtedness and simultaneously receiving $10,500 from her, was content to accept from her the difference in the amounts as expressed by the notes above mentioned. The petition recites that the plaintiff took charge of the business, and on August 4, 1931, the missing ledger sheets of Manry's individual account were found, by which it was disclosed that on May 3, 1926, Manry's account amounted to $5000.69, according to the books, but that on that date was reduced to 69 cents by a false credit entry purporting to show that the partnership had received his note for $5000, and it is alleged that no such note was genuinely credited, unless it may have been the note of Manry, in which latter case it was never paid. In a similar way it was alleged that on December 31, 1929, the account of Manry was reduced by a false credit entry of $3500, and that, in effect, the indebtedness appearing on the new or final ledger sheet was, by reason of the two aforesaid false credits, made to appear to be $8500 less than it should have been, all of which fraudulent transactions were concealed from the plaintiff and were unknown to her until August 4, 1931, when the missing ledger sheets were found.

The defendant contended that no cause of action was set forth in the petition; that it is shown that the plaintiff became dissatisfied with the manner in which the partnership was being managed and contended that he owed more than was represented, and by way of compromise entered into a contract under which she was to pay Manry $10,500 for his one-half interest and he was to pay her a sum agreed upon as his individual indebtedness, to wit, $4230.20, thus ending all controversies; that the contract is shown to have been fully performed by him and that she can not be heard now to complain.

If we consider only the language of the dissolution agreement it must be said that there is much force in the argument. It is clear that the agreement definitely specifies the purchase price to be paid by Mrs. Hendricks and the amount of Manry's indebtedness, and it is shown that he was to receive only the difference. It is inferable from the petition that the parties terminated their relationship as partners, and that Mrs. Hendricks paid the difference of $6266.78 by executing and delivering certain described promissory notes. But, as contended by the de-

fendant in error, the petition shows that this was not an isolated agreement, but was entered into in pursuance of a certain offer made by Manry to the plaintiff a few days theretofore, that is, on July 24, 1931, which offer should properly be consulted to appraise the rights and liabilities of the contracting parties under the dissolution agreement. A contract is not necessarily contained in a single paper, and our Code provides in § 38-502 that all contemporaneous writings shall be admissible to explain each other. See also *Horne* v. *Evans,* 31 *Ga. App.* 370 (120 S. E. 787); *Marietta Savings Bank* v. *Janes,* 66 *Ga.* 286; *Martin* v. *Monroe,* 107 *Ga.* 330 (3), 333 (33 S. E. 62); *Guinn* v. *Marshall,* 156 *Ga.* 480 (119 S. E. 397). "Contemporaneous" means, literally, according to Webster, "living, existing, or occurring at the same time," but numerous authorities could be cited to the effect that the word does not connote perfect or absolute coincidence in point of time. One thing is contemporaneous with a given transaction when it is·so related in point of time as reasonably to be said to be a part of such transaction. Thus in *Marietta Savings Bank* v. *Janes,* supra, a letter under date of April 18, 1877, from a subsequent payee of a note to the maker was held to be admissible as part of the contract involving a promissory note executed under date of May 8, 1877, in pursuance of the letter.

The offer made by Manry on July 24, 1931, was a "give or take proposition." What purchase price was set is not disclosed by the petition, but the proposition was to be "as per the books," or according to the books, by which is meant by a reasonable and proper interpretation that the books should be looked to in determining the amount due the business by either of the partners, and that a truthful revelation by the books should form the basis of the amount which either partner might be said to be indebted to the business. The price for a one-half interest was inferentially set by Manry, as the offer came from him, but he did not become the purchaser, as it is disclosed by the petition that under the "give or take" feature of the offer the plaintiff elected to buy. On July 30, 1931, a dissolution agreement was entered into between the parties, Mrs. Hendricks agreeing to pay the amount of the purchase price set by Manry, and with the understanding that he was to discharge to her, as purchaser, his true individual indebtedness "as per the books," which amount the dissolution

agreement recited as being $4230.20, subsequently to his declaration to the plaintiff's accountants that he owed only $3242.18 and his representation that because of an existing error in his favor of $1000 the amount due by him was really $4230.20. If, in truth, as is alleged in the petition, Manry's indebtedness "as per the books" was $8500 more than the amount shown by the new or final ledger sheet, by reason of false credit entries of notes never received, or if received by the business never paid, the plaintiff is entitled to recover $8500 as part of the full payment of indebtedness which was contemplated under the contract evidenced by the offer of July 24, 1931, and the dissolution agreement of July 30, 1931. The missing ledger sheets were integral parts of Manry's individual account, and surely no one could reasonably contend that if they showed a balance of, say, $1000 against Manry, and by mistake or fraudulent intention a new sheet had been set up with a credit of $1000 in his favor, it would be actually shown by the books that he was entitled to receive $1000. Again, if on May 3, 1926, as shown by the petition, the total debits on his account amounted to $5000.69, and there was a credit entry of $5000 by reason of a note purportedly executed and delivered, his account would not absolutely and finally establish that he owed only 69 cents. It was only shown "as per the books" that at some time on May 3, 1926, he owed $5000.69 and that on the same day a note in the amount of $5000 was credited to his account, and that his account would be reduced to the sum of 69 cents only in the event the alleged note was in fact paid. The petition alleges that if any note was given as credited it was not paid, and thus a question is presented for a jury or an auditor as to how much Manry really owed the business "as per the books" on May 3, 1926. A similar question is presented as to whether or not on December 31, 1929, a note of $3500 was executed and delivered to the partnership business, and if so genuinely credited was in fact paid, thus actually reducing Manry's account by that amount. Notwithstanding that the petition alleges fraud and deceit upon the part of Manry, we think the real intention of the plaintiff, as manifested by all the allegations of the petition, is to recover an indebtedness which is claimed to be due and unpaid, the right to recover which arises under an express contract of purchase as hereinbefore dealt with. Obviously, though there be

a tort perpetrated by one against another in the consummation of a contract, the injured party may waive the tort and sue in assumpsit. A cause of action was set out in the petition with respect to the alleged indebtedness of $8500.

The petition further alleged that "Said defendant, on April 22, 1931, procured from Mutual Life Insurance Company a loan on a policy issued by said company on defendant's life in favor of said Farmers Hardware & Furniture Company of $861.35, the same being the property of said company, the premiums on said policy having been paid by said company, and then converted the entire amount of said loan to his own use and benefit." It is not made to appear that the books purported to show any record, true or false, of this transaction. Accordingly, as respects this item, no recovery could be had upon the express contract on the theory that a promise to pay "as per the books" would include the payment of this amount. Strictly speaking, it is not shown to have been in the exact contemplation of the parties. The money collected by Manry was the loan value or partnership equity in the policy. There being no allegation of insolvency of the partnership business, Manry was, at the time of the receipt of the money, equitably entitled, as in a distribution, to one half of the amount. Mrs. Hendricks was entitled to the other half. If Manry used all of it, he could not equitably be said to have converted more than one half of the amount. The petition shows a right to recover not all, but one half, of the amount, as for money had and received. Incidentally, it may be stated that there is no ground of demurrer attacking the petition as setting forth two causes of action in one count.

From the above it follows that the auditor properly overruled the defendant's general demurrer, and that the superior court did not err in overruling the defendant's exception of law in this respect. The special demurrers of the defendant have been carefully considered and no merit is shown therein, and a detailed discussion is deemed unnecessary. The petition was amended to overcome certain objections raised by the defendant, and as amended sufficiently put the defendant on notice to prepare his defense, especially where, as here, it is alleged that the business was under the management of the defendant and the plaintiff was ignorant of the details of the business.

■ From the evidence before him the auditor made the following findings of fact which are not excepted to by the defendant: Prior to the death of C. J. Rambo, the husband of the plaintiff, C. A. Manry and C. J. Rambo organized and incorporated a business in Edison, Georgia, known as the Farmers Hardware & Furniture Company. Upon the death of Rambo C. S. Seely became administrator of his estate, and Mrs. Ruth Hendricks, the plaintiff, became the purchaser of the shares of stock which the deceased Rambo owned in said business at his death. C. A. Manry and C. J. Rambo each owned a one-half interest, and by the purchase above mentioned Mrs. Ruth Hendricks succeeded to the right, title, and interest of Rambo. During the lifetime of Rambo, and thereafter, Manry was manager of the Farmers Hardware & Furniture Company. Manry continued to be the general manager of the business, in charge of the management, conduct, books, and records of the business and drew a salary for his services as such manager. The original charter of the company expired, and the business was thereafter operated as a partnership by Manry and Mrs. Hendricks. Mrs. Hendricks became dissatisfied and the partners desired a dissolution, and two written proposals were made by Manry under date of July 24, 1931. The first of these was as follows: "This is to verify figures made you this a. m. I offered ten thousand five hundred dollars for the Rambo interest in the Farmers Hdw. & Furn. Co. less the following accounts: [Listing accounts of Mrs. Hendricks and of others in which she was interested in the total sum of $3314.73.] It is further agreed that should the Farmers Hdw. & Furn. Co. be called upon for any back taxes, both State and Federal, prior to 1931, they are to be borne equally between Mrs. Ruth Hendricks and C. A. Manry. Provided further that satisfactory terms can be arranged on balance after deducting the above accounts." The second offer on July 24, 1931, was as follows: "This is to verify figures made you this a. m. I offered ten thousand five hundred dollars for the Rambo interest in the Farmers Hdw. & Furniture Co. less their accounts amounting to $3314.73. It is further agreed that should the Farmers Hdw. & Furn. Co. be called upon for any back taxes, both State and Federal, prior to 1931, they are to be borne equally between Mrs. Ruth Hendricks and C. A. Manry. It is further agreed that if it is a give proposition I would want to fix notes for the

amount payable $2000 Jan. 1st, each year. This is a give or take proposition as per the books." The auditor found that the last mentioned proposition was a give or take proposition as per the books of the Farmers Hardware & Furniture Company. The partnership was dissolved by a written dissolution agreement, dated July 30, 1931, which contained recitals as hereinbefore set forth in the statement of the allegations of the petition as amended.

Other findings of facts by the auditor, however, became the subject matter of exceptions by the defendant, namely:

"4(g). I find that in pursuance of said offers and said contract [the dissolution agreement] Mrs. Ruth Hendricks did, on July 30, 1931, purchase the interest of C. A. Manry upon the basis of his indebtedness to said business being $4230, and a dissolution of said partnership was effected upon that basis.

"4(h). I find that on the 3rd day of May, 1926, the balance of C. A. Manry due to said business of Farmers Hardware & Furniture Company was the sum of $5000, and that on said day there appears an entry upon the ledger sheet as follows, to wit: 'by credit $5000,' the 'by credit' being written in pencil and being admitted by the defendant C. A. Manry to be in his handwriting and his entry. The auditor finds that no note was given by C. A. Manry, or any one else, for such entry, and that neither the alleged note nor said amount was ever paid by C. A. Manry to the Farmers Hardware & Furniture Company, and that said entry was without any consideration ever being paid to Farmers Hardware & Furniture Company.

"4(i). Your auditor finds that at the close of business on the 31st day of December, 1929, the ledger account of C. A. Manry, as appears by the balance sheet, showed a balance of $6217.78, and your auditor finds that the same was arbitrarily reduced by the defendant C. A. Manry by a pencil entry of $3500, and that the same was without any consideration whatsoever, and that no consideration was ever paid, nor did Farmers Hardware & Furniture Company ever receive any consideration therefor, and that the same was a mere book entry without any consideration paid therefor.

"4(j). I find that on April 22, 1931, Clarence A. Manry, defendant, as insured, and Farmers Hardware & Furniture Company, by A. E. Manry, treasurer, and beneficiary, obtained an al-

leged loan from the Mutual Life Insurance Company of New York on policy No. 2688124, and that the Mutual Life Insurance Company of New York, on April 22, 1931, issued its check to Clarence A. Manry and Farmers Hardware & Furniture Company, No. 66660, in the sum of $861.35, and that Clarence A. Manry received the consideration personally for said check, and that the insurance policy was the property of Farmers Hardware & Furniture Company, and that the proceeds received from the life insurance policy, payable to the corporation as beneficiary, was the property of Farmers Hardware & Furniture Company, and not C. A. Manry, defendant, individually. I find that the same was an unauthorized appropriation by C. A. Manry of an asset of the partnership; that the title to the insurance contract was vested in the firm, and that C. A. Manry is liable to his copartner, the plaintiff, for one half of the cash surrender value of the policy.

"4(k). I find, as a matter of fact, that at the time of the purchase by plaintiff, Mrs. Ruth Hendricks, of the interest of C. A. Manry in the partnership and business known as Farmers Hardware & Furniture Company the defendant, C. A. Manry, did not disclose to her, nor did she have any knowledge or notice whatsoever of the facts included in finds 4(h), 4(i), and 4(j) of this report. In this connection the auditor further finding as a fact (1) that Mrs. Ruth Hendricks, plaintiff, was not familiar with the books of the business of Farmers Hardware & Furniture Company, and did trust defendant, C. A. Manry, as manager, and had not notice before August 4, 1931, as to the contents of the said missing ledger sheets showing a credit of $5000 and $3500, and did not know of said missing ledger sheets until that date; and (2) that the give or take proposition copied in full in this report was not a compromise of disputed accounts, but was, on the contrary, a proposal to give or take a certain amount in a straight out sale; and (3) that the give or take proposition and the sale were not accomplished by duress against the defendant."

To these findings of fact the defendant filed exceptions Nos. 1 to 11, inclusive, in the superior court, to support which are attached transcripts of part of the evidence. Subsequently to the filing of the auditor's report the plaintiff moved the court to "enter a judgment (1) disapproving and disallowing the defendant's exceptions of fact filed to the auditor's findings, (2) overruling said

exceptions of fact, (3) overruling each of defendant's exceptions of law, and (4) that the court enter judgment in said case in accordance with the findings of the auditor." (The findings of law and exceptions thereto are hereinafter dealt with in division 3 of the opinion.) Thereafter, on November 29, 1940, the said exceptions and motion to disapprove, disallow, and overrule the exceptions came on to be heard before the court, and on that date, after argument had, the court passed an order adjudging that "all exceptions of law and of fact filed to the auditor's report be and the same are hereby overruled and disallowed." On December 2, 1940, the court entered a final judgment wherein, among other things, it was adjudged that "the defendant having filed exceptions of fact and exceptions of law to said [auditor's] report, the court overrules and disallows all of said exceptions of law and of fact filed in said case, and hereby makes the report of the auditor the judgment of the court in said case." In the same judgment, as shown in the statement of facts hereinbefore, it was adjudged that the plaintiff recover the sum of $8930.67, with interest thereon at 7 per cent. from August 20, 1931, the date of the filing of the petition.

The plaintiff in error contends that the case should be reversed for the reason that the court erred in not submitting to the jury the defendant's exceptions of fact, as provided by Code § 10-402 in all law cases, and further contends that error is properly assigned in the bill of exceptions on the ruling and judgment of the court in this respect. The defendant in error contends to the contrary. We think that the contention of the plaintiff in error in this respect is well taken. In the bill of exceptions, which is quoted in the statement of facts above, the aforementioned proceedings are set out in detail, and it is recited: "Plaintiff in error alleges that said judgment and order passed on November 29, 1940, as aforesaid, entered into, affected, and controlled the further progress and final result of said case, and that she did then and there except to such order and judgment on the ground that it was contrary to law, and says that said judge should have sustained and approved each and every ground of the said exceptions to the auditor's report for the reasons and on the grounds therein specifically set forth and alleged in them, and that the court erred in making said order and judgment dated November 29, 1940, for each of the reasons and grounds set forth specifically in said ex-

ceptions to the auditor's report." Error is also assigned on the
final judgment of December 2, 1940, as not being a legal termina-
tion of the case. A copy of said exceptions to the auditor's report
was attached to and made a part of the bill of exceptions, and the
prayer of said exceptions was that "said exceptions of fact be
approved by the court and passed upon by a jury, and that said
exceptions of law be sustained." Code § 10-402 provides: "In
all law cases where an auditor is appointed, exceptions of fact to
his report shall be passed upon by the jury as in other issues of
fact." The evidence before the auditor presented issues of fact.
It is manifest that under the Code and numerous decisions of the
appellate courts of this State it is reversible error for the trial
court in a law case to fail to refer to the jury exceptions of fact
filed to the auditor's report. The court, in the present case, which
has been held to be one at law, instead of submitting the de-
fendant's exceptions of fact to the jury, sustained the motion of the
plaintiff and disallowed and overruled the exceptions. In so doing
the court plainly erred, and the direct bill of exceptions sufficiently
assigns error thereon. Accordingly, the case must be reversed.
See *Weaver* v. *Cosby,* 109 *Ga.* 310, 312 (34 S. E. 680) ; *Philips* v.
*Miller,* 57 *Ga. App.* 561 (196 S. E. 276). Under the allegations
and assignments of error as contained in the bill of exceptions in
the present case, the ruling here made is not in conflict with the
rulings in *Adams* v. *Bishop,* 42 *Ga. App.* 811 (157 S. E. 523), and
*McIntire* v. *McQuade,* 190 *Ga.* 438 (9 S. E. 2d, 633), cited and
relied on by the defendant in error, and those cases do not require
a different ruling from the one here made.

■ The auditor found as follows in finding of law 5 (c) : "The
duty of making the actual accounting rests on the partner who
kept the accounts. The partner who kept the accounts has the
burden of proving their accuracy and showing the amount due or
belonging to him. A partner who has used partnership funds for
his individual purposes has the burden of proving that he has made
repayment." To the finding in the last sentence above the de-
fendant filed an exception of law No. 1 on the grounds that (1)
it was contrary to law and (2) inapplicable to the facts because,
it is averred, there is no finding of fact in the auditor's report
that Manry used the partnership funds for his individual pur-
poses and it is inapplicable to and unwarranted by the evidence

adduced before the auditor and set out in his report. The findings of fact by the auditor in 4(h), 4(i), and 4(j) that on May 3, 1926, Manry was indebted to the partnership in the sum of $5000, on December 31, 1929, in the sum of $6269.78 (after the $5000 debit had been offset by an entry "by note"), and that he used $861.35, the proceeds of an insurance policy, without authority and converted one half of the latter amount to his own use are contrary to the contentions of the plaintiff in error as to the ground of objection (2) above. The defendant indeed admitted the fact of the *debits* at the respective times, but set up in his answer that he had paid the same. He also admitted using the total proceeds of the insurance policy, but claimed that it rightfully belonged to him under an agreement with his former associate in the business and whose interest was later acquired by the plaintiff. It is a fundamental rule that one asserting payment of an indebtedness shown to exist has the burden of proving payment, and the auditor did not err in his finding of law here complained of. The court properly overruled the defendant's exception in this respect. The amount of $861.35 derived from the insurance policy was not shown to be a charge on the books. If on the next trial of the case the jury find that the policy was the property of the partnership, Manry was entitled to one half of the amount used, in the absence of insolvency of the partnership. Inasmuch as he was entrusted with the policy, as he admits, the duty was on him, if he used the entire proceeds therefrom, to account to the plaintiff for one half of the amount received by him. See *Garrett* v. *Morris,* 104 *Ga.* 84 (30 S. E. 685), which is controlling in principle. While that case was one in equity, it is applicable here where, as ruled by the Supreme Court, the plaintiff was entitled to an accounting if the action at law was maintainable.

The auditor found as a finding of law No. 5 (d) : "The right to change the beneficiary in an ordinary life insurance policy does not include the power to surrender and cancel without the consent of the beneficiary. The right to change the beneficiary is quite different from the right to surrender the policy for the purpose of cancellation; the former contemplates modification and continued existence of the policy, while the latter contemplates its complete destruction." This finding of law is excepted to in defendant's exception of law No. 2, on the ground (1) that it is

not a correct statement of the law and (2) is inapplicable to and unwarranted by the facts as found by the auditor in finding of fact No. 4(j). The first ground of objection is controlled adversely to the plaintiff in error by *Roberts* v. *Northwestern Insurance Co.,* 143 *Ga.* 780 (85 S. E. 1043), which rules in the language quoted by the auditor. While the auditor's finding of fact did not specifically determine that Manry surrendered the policy, Manry's own testimony was such as to show that he regarded himself as equitably the owner of the policy and the proceeds and effected a practical surrender at the time he obtained the loan of $861.35, as he testified that he knew Mrs. Hendricks, his partner, would not agree to a change of beneficiary and "I had so much insurance or more than I could carry, so I just made a borrow, all I could borrow on the policy, and let it go. . . I had to drop some, and I figured I would drop that." The auditor found that Manry obtained "an alleged loan," and, although he did not precisely denominate the transaction as a surrender of the policy, his finding, in connection with Manry's testimony and the auditor's finding of law, must be construed as a finding by him that the policy was in fact surrendered. Accordingly, the exception is without merit and the court did not err in overruling the same. (Exception of law No. 3 relating to the overruling of the defendant's demurrers has been dealt with in the first division of this opinion.)

The auditor found as a "conclusion of law and judgment:" "(6). Considering the foregoing findings of fact and law, my conclusion is that the plaintiff, Mrs. Ruth Hendricks, is entitled to an accounting against her copartner, C. A. Manry, and that upon an accounting a judgment in favor of the plaintiff, Mrs. Ruth Hendricks, and against C. A. Manry, the defendant, for the following sums, to wit: (1) the sum of five thousand ($5000) dollars, by reason of findings of fact No. 4 (h) of his [this] auditor; (2) the further sum of thirty-five hundred ($3500) dollars, by reason of the findings of fact No. 4 (i) by this auditor, and (3) the sum of four hundred thirty and 67/100 dollars, by reason of the findings of fact No. 4 (j) by this auditor; (4) that treating the date of the filing of the petition, to wit, August 20, 1931, as the date of demand, that interest should be allowed on said sums at the legal rate of seven per cent. per annum from the date of

the filing of said petition. Whereupon, it is considered, ordered, adjudged, and decreed that the plaintiff, Mrs. Ruth Hendricks, do have and recover judgment of and against the defendant, C. A. Manry, for the total sum of eight thousand, nine hundred thirty and 67/100 dollars, with interest upon the same at the rate of seven per cent. per annum from August 20, 1931, and it is recommended that the costs of this suit be taxed against the defendant." In exceptions of law Nos. 4 and 5 the defendant excepted on the grounds that no liability results as a matter of law for the full amounts of $5000 and $3500 under the auditor's findings of fact 4 (h) and 4 (i), but the findings would demand a judgment for only one half of such amounts because the plaintiff had only a one-half interest in the partnership business, and that the petition is one for an accounting in equity, and not one brought by the plaintiff against an ordinary debtor, and that it would be inequitable for the plaintiff to recover more than one half even under the findings of fact of the auditor. The case has been held by the Supreme Court not to be one in equity, but a proceeding at law, and, being without jurisdiction, that court transferred the case to this court. We have held that it is an action upon an indebtedness, instituted, as ruled by the Supreme Court, by one person against another person who had *formerly* been the plaintiff's partner. The action is not one for a *division* of the net partnership assets after paying liabilities, but in it the plaintiff seeks to recover a balance due under a contract by which the defendant agreed to pay his account as per the books, under which the plaintiff agreed to pay a stated amount for the defendant's one-half interest, and also to recover the proceeds of an insurance policy which the plaintiff claims rightfully belonged to the partnership before her contract of purchase. As to the amounts of $5000 and $3500 the plaintiff would be entitled to recover, if the alleged contract was entered into, not merely one half thereof but the full amounts, provided that the defendant is shown to have been indebted to the partnership in such sums. As to the proceeds of the life-insurance policy, the plaintiff would be entitled to recover one half of the $861.35, as for money had and received, if the partnership was the beneficiary and the defendant Manry converted the entire amount to his own use. The court's ruling that the plaintiff was entitled to recover as recited in the judgment was,

464

however, premature. Before such a judgment could be rendered it was necessary that the court submit to the jury the defendant's exceptions of fact as hereinbefore dealt with, and this the court failed to do. It follows that the court's judgment in overruling and disallowing said exceptions of law 4 and 5 was premature.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*